UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID ANTHONY AVILA,<br><br>Plaintiff,<br><br>v.<br><br>M.D. McMAHON, et al.,<br><br>Defendants. | No. 2:18-cv-00163-JAM-AC<br><br>ORDER and FINDINGS AND RECOMMENDATIONS |

Plaintiff is proceeding in this matter pro se, and pre-trial proceedings are accordingly referred to the undersigned pursuant to Local Rule 302(c)(21). Pending is a second motion to dismiss from defendant County of San Joaquin ("the County") (ECF No. 48), and a motion to strike, also from the County (ECF No. 49). Plaintiff filed untimely oppositions to both motions. ECF Nos. 51 and 52. The parties each appeared before the court for oral argument on January 9, 2019. ECF No. 54. Having considered the record of this case as a whole and the arguments of the parties, the court recommends the motion to dismiss be GRANTED without further leave to amend, and that the motion to strike be DENIED as moot.

**I. BACKGROUND**

A. <u>Procedural History</u>

On January 25, 2018, plaintiff David Avila brought claims for civil rights violations under 42 U.S.C. § 1983 against the County, police officer M. D. McMahon, John Davis and Davis

1

Towing, Inc. ECF No. 1. Plaintiff voluntarily dismissed defendants John Davis and Davis Towing, Inc. ECF No. 28. As to the County, plaintiff brought a vicarious liability claim for (1) "willfully and knowingly" allowing state actors to violate his constitutional rights, (2) facilitating his retaliatory arrest and detainment, and (3) failing to properly train subordinates and set appropriate policy. ECF No. 1 at 11. The County brought a motion to dismiss the original complaint (ECF No. 4), which was granted and plaintiff was permitted to amend. ECF No. 34.

While the findings and recommendations regarding the previous motion to dismiss were pending, plaintiff prematurely filed a proposed amended complaint (ECF No. 42), which was stricken by the court. ECF No. 46. Following adoption of the findings and recommendations (ECF No. 45), plaintiff was granted leave to file an amended complaint. ECF No. 46. Plaintiff filed the operative Amended Complaint on October 29, 2018. ECF No. 47.[1] Now pending before the court are two motions from the County: a motion to dismiss the amended claims against it (ECF No. 48) and a motion to strike plaintiff's claim for punitive damages (ECF No. 49).

                B.        Relevant Allegations of the Complaint

Plaintiff alleges as follows. On January 28, 2016, he was pulled over by CHP Officer McMahon on Highway 4 in San Joaquin County. ECF No. 1 at 1; ECF No. 47 at 2, 5.[2] Officer McMahon approached his vehicle, informed plaintiff that he was driving over the speed limit, and demanded to see identification and insurance papers. Id. Plaintiff responded, "I am traveling and not driving." Id. Officer McMahon became agitated, telling plaintiff not to give him "any of that constitutional stuff because it does not work." Id. Plaintiff provided McMahon with his driver's license, but could not immediately find his proof of insurance. Id. Officer McMahon responded, "No problem, I can just add that to your violation." Id. McMahon then told plaintiff he would impound his truck for thirty days. Id. at 2.

////

---

[1] Plaintiff, who is a pro se e-filer, incorrectly docketed his Amended Complaint as a Third Amended Complaint. The Clerk will be directed to correct the error.

[2] The Amended Complaint incorporates by reference certain paragraphs of the original complaint. ECF No. 47 at 2. Plaintiff will be directed to correct this technical defect after the district judge acts on this recommendation.

Plaintiff got out of his vehicle to retrieve the insurance papers, asking McMahon about the constitutionality of the stop and whether McMahon had taken an oath of office. Id. Officer McMahon then arrested plaintiff, "physically attacked" him, and handcuffed him roughly. Id. Plaintiff experienced severe pain from McMahon's "manhandling." ECF No. 47 at 7. Plaintiff was ordered not to move his hand while the cuffs were applied, but his body was so "contorted" by McMahon's actions that compliance with this direction was impossible. Id. The handcuffs restricted plaintiff's circulation, and his arms were placed behind his back in a way that "his shoulders felt as though they were being pulled from the sockets." Id. at 8.

When McMahon and plaintiff arrived at the county jail, plaintiff was forced up against the wall in such a way that that his positioning and restriction were "apparent to anyone present." Id. A police officer asked McMahon what was going on, and McMahon replied that he "just arrested one of those constitutional guys." ECF No. 47 at 2. When McMahon told the officer that plaintiff was from Oakdale, the officer responded, "Oh, one of those cowboys." Id. Plaintiff later received a summons informing him that McMahon had charged him with resisting arrest. Id. at 7.

The website regarding the County Jail's security system states that it "is as high as it is in any maximum security prison" and that the facility includes security cameras, electronic detectors, and reinforced fencing topped with razor wire, and that personnel are trained to protect themselves, the facility, and inmates. Id. at 9. Plaintiff contends that with such security measures in place, jail personnel would have seen that his restraint was unlawful and punitive and not necessary to the security of the facility or others in the facility. Id. Jail personnel did nothing and said nothing to object to the way McMahon was handling plaintiff. Id. Plaintiff did not say anything to jail personnel because he feared for his own safety. Id. Plaintiff asserts that the fact that jail personnel did not intervene with McMahon's treatment of plaintiff or offer plaintiff medical treatment demonstrates that personnel were deliberately indifferent. Id. at 11. When plaintiff's handcuffs were removed by jail personnel, his wrists were red and rubbed raw, and he was in severe pain. Id. at 12. Though County personnel placed plaintiff in a holding cell, they did not offer medical treatment for his wrists, arms, or shoulders, or offer to relieve his pain. Id. at 13.

Exhibit B to the Amended Complaint is a document entitled "Laws and Guidelines for Local Detention Facilities," purportedly published by California's State Board of Corrections in 1974. ECF No. 47 at 14; ECF No. 47-2. This document lists a requirement that when the daily average of more than 100 persons are confined in a facility, a licensed physician shall be available at all times. ECF No. 47-2 at 96. Plaintiff does not allege whether such a provider was on duty at the time of his booking, but asserts if one was on duty, jail personnel were deliberately indifferent by not calling that provider to assist the plaintiff. ECF No. 47 at 15. Plaintiff also asserts that he was not offered access to a telephone, and this constitutes deliberate indifference to his right to be released as soon as possible. Id.

Plaintiff also attaches to his complaint a "Mandatory Training Checklist" (Exhibit E, ECF No. 47-1), on which he highlighted a requirement that employees participate in "discrimination and harassment" training, and a "library list" of study and training documents obtained from County Human Resources (Exhibit F, ECF No. 47-4). Plaintiff also attached a "Memorandum of Understanding Sheriff's Management (J) Table of Contents" (Exhibit G) which lists a chapter for in-service and job-related training. ECF No. 47-3 at 1, 3.

### C. The Claims

Plaintiff brings three causes of action against the County: (1) "Count V. Intentional Infliction of Emotional Distress;" (2) "Count VII. Vicarious Liability for Incustody [sic.] Violations;" and (3) "Count X. Declaratory Relief." ECF No. 47 at 23-25. Plaintiff seeks compensatory and punitive damages. Id. at 26.

## II. MOTION TO DISMISS / MOTION TO STRIKE

The County seeks to dismiss the claims against it under Federal Rule of Civil Procedure Rule 12(b)(6) for failure to state a claim against the County and for failure to comply with Fed. R. Civ. P. 8. ECF No. 48-1 at 3-4. The County separately moves to strike plaintiff's claim for punitive damages. ECF No. 49.

### A. Rule 8 and 12(b)(6) Standards

Rule 8 of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair

notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

In order to survive dismissal for failure to state a claim, a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. It is insufficient for the pleading to contain a statement of facts that "merely creates a suspicion" that the pleader might have a legally cognizable right of action. Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-35 (3d ed. 2004)). Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In reviewing a complaint under this standard, the court "must accept as true all of the factual allegations contained in the complaint," construe those allegations in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Erickson v. Pardus, 551 U.S. 89, 94 (2017); Hebbe v. Pliler, 627 F.3d 338, 341-42 (9th Cir. 2010). The court need not accept as true legal conclusions "cast in the form of factual allegations." Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). Pro se complaints are construed liberally. Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir. 2014). A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies

5

could not be cured by amendment.  See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

    B. <u>Plaintiff Cannot Pursue Relief on a Vicarious Liability Theory</u>

  As this court has previously explained, plaintiff's vicarious liability claim against the County cannot survive because § 1983 does not provide for vicarious liability.  See Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 694 (1978).  Accordingly, Count VII of the Amended Complaint, which purports to state a cause of action for "vicarious liability for incustody violations" and alleges that the County willfully and knowingly allowed State actors to violate petitioner's rights, fails to state a claim for relief.

    C. The Allegations of the Amended Complaint Do Not State a Claim for Relief Under *Monell*

  The Amended Complaint emphasizes that plaintiff's claims against the County are based on County Jail officials' toleration of Officer McMahon's alleged violations of plaintiff's constitutional rights.  ECF No. 34 at 6.  Municipal liability under Monell, supra, is limited to deprivations of rights that are caused by a municipal policy or by the failure to properly train employees.  See Lee v. City of Los Angeles, 250 F.3d 668, 681 (9th Cir. 2001); Davis v. City of Ellensburg, 869 F.2d 1230, 1235 (9th Cir. 1989).  To support liability, inadequate training must be "closely related" to plaintiff's injury.  City of Canton v. Harris, 489 U.S. 378, 391 (1989).  Plaintiff was previously advised of these standards, and was granted leave to amend in order to add allegations related to County policies and/or training practices.  ECF Nos. 39 at 5-6, 45.

  The Amended Complaint alleges that the failure of County Jail personnel to intervene in plaintiff's mistreatment by Officer McMahon is attributable to County policy and/or training. See, e.g., ECF No. 47 at 10, ¶¶ 33-34.  Such conclusory allegations are insufficient to state a claim for relief, as they amount to little more than a formulaic recitation of the elements of municipal liability.  See Twombly, 550 U.S. at 555.  As plaintiff has previously been informed, specific factual allegations regarding the defective policy or training are required.  See Lee, 250 F.3d at 681.  Although plaintiff has attached exhibits that reflect general standards for jail personnel training regarding discrimination and the need to maintain medical staff, he has not produced a single policy of the San Joaquin County Jail which could have been the "moving

force" behind the alleged violation of rights. See Lee, 250 F.3d at 681. Nor do the facts plaintiff alleges demonstrate a failure of training which led jail personnel to violate any particular County policy. Plaintiff's allegations that County employees asked McMahon "what was going on," where plaintiff was from, referred to plaintiff as a "Cowboy," and allowed plaintiff to be booked into jail, ECF No. 47 at 11, are not sufficient to support a constitutional claim based on lack of training.

In sum, the Amended Complaint does not state a claim for municipal liability that rises above the speculative level. Twombly, 550 U.S. at 555. At hearing, plaintiff argued that he cannot identify the existence of relevant policies or training practices absent discovery. While the court sympathizes with this dilemma, the fact remains that a plaintiff is not entitled to discovery unless the allegations of the complaint "raise a reasonable expectation that discovery will reveal evidence" of a custom, practice, or policy of the County. See Twombly, 550 U.S. at 556. The purpose of discovery is to develop evidence related to a known claim; it is not intended for the discovery of claims. The Amended Complaint fails to identify any County policy that caused the alleged deprivations of plaintiff's rights. The alleged facts do not support a conclusion that the County's training of jail personnel was so inadequate as to demonstrate deliberate indifference to the rights of arrestees. See Davis, 869 F.3d at 1235. "When one must resort to inference, conjecture and speculation to explain events, the challenged practice is not of sufficient duration, frequency and consistency to constitute an actionable policy or custom." Trevino v. Gates, 99 F.3d 911, 920 (9th Cir. 1996). Accordingly, plaintiff's Monell claim fails.

D. Putative Fourteenth Amendment Equal Protection Claim

To the extent plaintiff seeks to present a claim against the County for discrimination under the Fourteenth Amendment's Equal Protection Clause, see ECF No. 47 at 13, ¶ 40, the claim fails. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)). To state a claim for a violation of the Equal Protection Clause a plaintiff must show that the defendants

acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.'" Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013) (quoting Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998)). Alternatively, plaintiff can show "that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (citations omitted). "Similarly situated" persons are those "who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992) (citations omitted). The rationale is that "[w]hen those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference, to ensure that all persons subject to legislation or regulation are indeed being 'treated alike, under like circumstances and conditions.'" Engquist v. Or. Dep't of Agric., 553 U.S. 591, 602 (2008).

Plaintiff alleges that "the classification of AVILA and others from Oakdale as law breakers when they relied on the Constitution" was discriminatory and unlawful. That "classification," along with jail personnel stating "Oh, one of those cowboys" upon learning plaintiff was from Oakdale, appear to be the only facts offered in support of a discrimination claim. ECF No. 47 at 11. These allegations do not amount to a Fourteenth Amendment violation because neither Oakdale residents nor "constitutionalists" are a protected class. Plaintiff has not alleged any facts to show that detainees who are not from Oakdale are treated differently under like circumstances. Because plaintiff has not alleged facts that show he was discriminated against based on his membership in a protected class, or that he was treated differently from similarly situated individuals, any putative Fourteenth Amendment claim cannot survive.

E.     Putative Fourteenth Amendment Due Process Claim

To the extent plaintiff seeks to present a claim for deliberate indifference under the Fourteenth Amendment Due Process Clause, see ECF No. 47 at 13, ¶ 40, the claim fails. In the body of his Amended Complaint, plaintiff repeatedly refers to the "deliberate indifference" of County officials in failing to provide medical treatment for marks left by his handcuffs and for failing to intervene in McMahon's handling of him in the jail. Id. at 8, 12. Because plaintiff was a pre-trial detainee, these allegations are properly analyzed under the Fourteenth Amendment's

Due Process Clause:

> Inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause. See Bell v. Wolfish, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (holding that, under the Due Process Clause, a detainee may not be punished prior to conviction). Under both clauses, the plaintiff must show that the prison officials acted with "deliberate indifference."

Castro v. County of Los Angeles, 833 F.3d 1060, 1067–68 (9th Cir. 2016) (en banc) (setting forth elements of Fourteenth Amendment failure-to-protect claim by pretrial detainee), cert. denied sub nom. Los Angeles County v. Castro, 137 S.Ct. 831 (2017); see also Lolli v. County of Orange, 351 F.3d 410, 418–19 (9th Cir. 2003) (although a pretrial detainee's claim of medical deliberate indifference is analyzed under the Fourteenth Amendment Due Process Clause, rather than the Eighth Amendment, the same standards apply).

"[T]he test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong ... is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations, punctuation and quotation marks omitted). The plaintiff must also show that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

The allegations of the Amended Complaint fall far below the standards articulated above. First, plaintiff's allegation of "red and raw" wrists due to handcuffing, ECF No. 47 at 12, does not demonstrate a "serious medical need" on its face. Jett, 439 F.3d at 1096. Further, plaintiff admits that he "did not say anything to jail personnel[.]" ECF No. 47 at 10. This, combined with the relatively minor allegations regarding his injuries, demonstrates that jail personnel did not engage

9

in a "purposeful act or failure to respond." <u>Jett</u>, 439 F.3d at 1096. Finally, despite plaintiff's nonspecific allegations of "fear and emotional harm" (ECF No. 47 at 23), he has stated no facts demonstrating actual harm caused by the County employees' alleged indifference. <u>Jett</u>, 439 F.3d at 1096. For each of these reasons, plaintiff has not stated a Fourteenth Amendment Due Process claim against the County.

### F. Intentional Infliction of Emotional Distress Claim

The County moves for dismissal of plaintiff's Intentional Infliction of Emotional Distress ("IIED") claim on the grounds of municipal immunity under the California Tort Claims Act and for failure to state a claim under Rule 12(b)(6). ECF No. 48-1 at 9. Plaintiff does not allege compliance with the California Tort Claims Act. According to California Government Code § 815, "[e]xcept as otherwise provided by statute, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public entity employee or any other person." Plaintiff's failure to allege compliance with the California Tort Claims Act likely bars the claim from adjudication in this court. However, at least one court in this District has held that a County may be liable under a respondeat superior theory for an IIED claim despite non-compliance with the California Tort Claims Act. <u>Blanco v. County of Kings</u>, 142 F. Supp. 3d 986, 1003–05 (E.D. Cal. 2015) (O'Neill, J.). It is unnecessary for this court to decide the issue, because the Amended Complaint clearly does not state a claim for IIED.

Under California law, the elements of a prima facie case for the tort of IIED are: "(1) extreme and outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing, emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's conduct." <u>Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.</u>, 129 Cal.App.4th 1228, 1259 (2005). With regard to the first prong of an IIED prima facie case, to be outrageous, conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community ... Generally, conduct will be found to be actionable where the 'recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" <u>Cochran v. Cochran</u>, 65

Cal. App. 4th 488, 494 (citing Rest.2d Torts, § 46, com. d.)).

Plaintiff's allegations involving the county employees fall far short of conduct that is "so extreme as to exceed all bounds of that usually tolerated in civilized community." Cochran, 65 Cal. App. 4th at 494. Plaintiff alleges jail staff referred to him as a "cowboy," failed to provide medical care (which he did not specifically request) for his red/raw wrists, and failed to object to the manner in which a non-County employee held him up against the wall with his arms behind his back. ECF No. 47 at 2, 8, 12, 19. At most, plaintiff's allegations amount to County employees acting as negligent bystanders. Taken as true and viewed in the most favorable possible light, these allegations do not support an IIED claim under California law. For this reason, the claim must be dismissed.

### G. Further Leave to Amend Is Not Warranted

The County's motion to dismiss should be granted, and dismissal of the County should be without leave to amend. In general, a pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987). Here, plaintiff's claims against the County have already been dismissed once with leave to amend. ECF Nos. 39, 45. The Amended Complaint has not cured any of the carefully explained deficiencies of the original claims against the County. Compare, ECF No. 1 and ECF No. 47. The facts alleged fall far short of stating any claim against the County, and it is clear that in this case further amendment would be futile. Noll, 809 F.2d at 1448. Accordingly, it is recommended that claims against the County be dismissed with prejudice.

### H. Claim for Punitive Damages

In a separate motion, the County seeks to strike claims for punitive damages against it. ECF No. 49. Plaintiff opposes the motion. ECF No. 52. Because plaintiff has stated no plausible claim against the County and dismissal of the County without leave to amend is recommended, the County's motion to strike plaintiff's punitive damages claims should be DENIED as MOOT.

### III. CONCLUSION

It is hereby ORDERED that the Clerk of Court shall re-designate the document filed at

11

ECF No. 47 as the Amended Complaint, and the document filed at ECF No. 49 as a Motion to Strike the Amended Complaint.

It is RECOMMENDED that the County's motion to dismiss for failure to state a claim (ECF No. 48) be GRANTED and that all claims against the County be DISMISSED with prejudice. It is further recommended that the County's motion to strike (ECF No. 49) be DENIED as MOOT.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, parties may file written objections with the court. Such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Local Rule 304(d). Failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 9, 2019

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE