1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DAVID ANTHONY AVILA,                        No.  2:18-cv-00163 JAM AC PS

12                  Plaintiff,

13          v.                                    FINDINGS AND RECOMMENDATIONS

14   M.D. McMAHON,

15                  Defendants.

16

17          Plaintiff is proceeding in this action pro se and the case was accordingly referred to the

18   undersigned by Local Rule 302(c)(21).  The last remaining defendant in this case, M.D.

19   McMahon, has moved for summary judgment.  ECF No. 79.  Plaintiff filed an opposition to the

20   motion (ECF No. 88) and an objection to the motion (ECF No. 87).  Defendant replied.  ECF No.

21   89.  For the reasons explained below, defendant's motion should be GRANTED.

                          **I.       Complaint and Procedural Background**

23          Plaintiff brought this civil rights action under 42 U.S.C. § 1983 and California law,

24   alleging violations of plaintiff's rights during a traffic stop and subsequent arrest.  Plaintiff's

25   Third Amended Complaint ("TAC") is the currently operative pleading.  ECF No. 61.  Plaintiff

26   alleges that on January 28, 2016, he was pulled over by McMahon on Highway 4 in San Joaquin

27   County.  ECF No. 61 at 1.  McMahon approached his vehicle, informed plaintiff that he was

28   driving over the speed limit, and demanded to see identification and insurance papers.  Id.

                                                 1

Plaintiff responded, "I am traveling and not driving." Id. McMahon became agitated, telling plaintiff not to give him "any of that constitutional stuff because it does not work." Id. Plaintiff provided McMahon with his driver's license, but could not immediately find his proof of insurance. Id. McMahon responded, "No problem, I can just add that to your violation." Id. McMahon then told plaintiff he would impound plaintiff's truck for thirty days. Id.

Plaintiff got out of his vehicle to retrieve the insurance papers, asking McMahon about why he was being stopped, the constitutionality of the stop, whether he had taken an oath of office, and whether he had the oath with him. Id. at 2. McMahon responded "Oh, you are ONE OF THOSE GUYS!" before ultimately telling plaintiff that he had taken an oath. Id. McMahon then arrested plaintiff, "physically attacked" him, and told him to "take the stance" and put his hands behind his head. Id. When plaintiff complied, McMahon allegedly grabbed plaintiff's wrists and handcuffed him roughly. Id. The handcuffs were so tight that they cut off plaintiff's circulation and resulted in severe pain. Id. Plaintiff also alleges that McMahon yanked his arms back resulting in severe pain, and left plaintiff cramped in the police car while he searched the plaintiff's truck. Id.

Plaintiff's car was towed. Id. McMahon drove plaintiff to the San Joaquin County Jail, resulting in plaintiff being in the police car for 30 minutes. When at the jail, McMahon told another young man that he had "just arrested one of those constitutional guys." Id. at 3.

## II.    Standard for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or

2

presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248. In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Service, Inc., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

3

1   "In evaluating the evidence to determine whether there is a genuine issue of fact, [the

2   court] draw[s] all inferences supported by the evidence in favor of the non-moving party."  Walls

3   v. Cent. Costa County Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is

4   the opposing party's obligation to produce a factual predicate from which the inference may be

5   drawn.  See Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

6   demonstrate a genuine issue, the opposing party "must do more than simply show that there is

7   some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations

8   omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the

9   non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391

10  U.S. at 289).

11              **III.    Statement of Undisputed Facts**

12          Unless otherwise specified, the following facts are either expressly undisputed by the

13  parties or have been determined by the court, upon a full review of the record, to be undisputed

14  by competent evidence.  Defendant's statement of undisputed facts is located at ECF No. 79-2,

15  and is supported by the declarations of defendant Officer Mark D. McMahon (ECF No. 79-3),

16  Clarence Robert Chapman (ECF No. 79-4), Julio A. Hernandez (ECF No. 79-5), and Lindsay

17  Goodwin (ECF No. 79-5), along with judicially noticeable Court Records from Superior Court of

18  California, County of San Joaquin, Case Number STK- CR- MI- 2016 - 3656 (ECF No. 79-7).[1]

19  Plaintiff did not submit a statement of undisputed facts, though he did oppose the motion.  ECF

20  Nos. 87, 88.

21          On the evening of January 28, 2016, plaintiff David Avila was driving a 1997 Ford F -

22  150 pickup truck, traveling eastbound on State Route 4 in San Joaquin County.  McMahon Decl.

23  ¶ 3; Hernandez Decl. Ex. B, Deposition of Plaintiff David Avila, 43:9-20; 48:5-7.  Defendant

24  California Highway Patrol (CHP) Officer McMahon was patrolling San Joaquin County in a

25  marked California Highway Patrol vehicle traveling on State Route 4, with a posted speed limit of

26  ─────────────────────

27  [1]  Records from other courts are subject to judicial notice. See U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) ("we may take notice of proceedings in other courts, both within and without the federal judicial system, if those

28  proceedings have a direct relation to matters at issue")(internal quotation marks omitted).

4

55 mph.  McMahon Decl. ¶ 3; Avila Dep. 60:19-61:12.  Officer McMahon was in uniform but was not wearing a hat.  Id.  Avila Dep.  Officer McMahon saw plaintiff's vehicle coming toward him at a high rate of speed; he estimated the speed of Mr. Avila's vehicle to be about 70 mph in a posted 55 mph zone.  McMahon Decl. ¶ 3.  Officer McMahon activated a dash mounted radar and received a reading of 71 mph from plaintiff's vehicle.  Id.  Plaintiff's vehicle was the lone vehicle at the location, and McMahon continued to track the vehicle as it passed him.  Id.  Officer McMahon made a U-turn and accelerated to catch plaintiff's vehicle, activating his red and blue emergency lights, but the subject vehicle did not immediately slow.  Id.; Avila Dep. 43:21-44:18.  Officer McMahon rapidly accelerated and activated his audible siren, and plaintiff pulled over.  McMahon Decl. ¶ 3; Avila Dep. 43:21-43:18, 45:2-46:3.

Mr. Avila admits that the stop was lawful.  Avila Dep. 25:4-12.  After Mr. Avila's vehicle had stopped, Officer McMahon exited the patrol vehicle and approached Mr. Avila's vehicle on the driver's side.  McMahon Decl. ¶ 4; Avila Dep. 46:9-11.  As Officer McMahon approached the vehicle, Mr. Avila was holding his California driver's license at eye level and told to Officer McMahon that the license was suspended.  McMahon Decl. ¶ 4; Avila Dep. 49:2-8.  Officer McMahon noticed that the license had expired on November 8, 2013 and Mr. Avila told McMahon that the reason for the suspension was "for failure to pay a ticket, not for unsafe driving though."  McMahon Decl. ¶ 4; Avila Dep. 49:2-8.  Mr. Avila admits and confirms that his driver's license was suspended at the time of the subject stop.  Avila Dep. 35: 18-36: 16; 41:22-42:14.  Mr. Avila failed to pay a previous traffic violation.  McMahon Decl. ¶ 4; Avila Dep. 41:22-42:1.  It is Mr. Avila's position that he is not required to possess a valid driver's license because he was "traveling" as opposed to driving.  Avila Dep. 33:18-34:4, 35:1-17; see also Avila Dep. 24:10-41:20.

Officer McMahon then asked Mr. Avila to turn off the vehicle and hand the officer the keys.  McMahon Decl. ¶ 4.  Avila began to hand Officer McMahon the keys and stopped and asked if his vehicle was going to be impounded.  Id.  Officer McMahon informed Mr. Avila that he was going to determine whether the license was suspended.  Id.  Mr. Avila then informed Officer McMahon that the officer could not take Mr. Avila's property without a warrant as he had

1    no legal right to take the property.  Id.  Officer McMahon advised Mr. Avila that he could be

2    arrested for simply driving with a suspended license and if Mr. Avila refused to provide the keys

3    he would be arrested for delaying the performance of duties and failing to follow a lawful order

4    by a peace officer.  Id.  Mr. Avila then provided the keys to Officer McMahon.  Id.

5         Officer McMahon next requested Mr. Avila's insurance information, and Mr. Avila

6    indicated he would have to look for it.  McMahon Decl. ¶ 4; Avila Dep. 49:9-25.  Officer

7    McMahon then provided Mr. Avila time to look for the insurance information.  McMahon Decl. ¶

8    4; Avila Dep. 52:11-53:24.  Officer McMahon returned to the patrol vehicle and using patrol car

9    technology, he determined that Mr. Avila's license was indeed suspended.  McMahon Decl. ¶ 5.

10   Because Mr. Avila's license was suspended, Officer McMahon requested a tow truck for

11   impoundment of Mr. Avila's vehicle, as authorized by California Vehicle Code section 14602.6.

12   Id.

13        While Officer McMahon was completing the paperwork for the traffic citation and vehicle

14   impoundment, Mr. Avila exited his vehicle and walked towards the passenger side of the truck.

15   McMahon Decl. ¶ 6; Avila Dep. 52: 11-53:24.  Mr. Avila told Officer McMahon that he was

16   looking for his insurance card.  McMahon Decl. ¶ 6; Avila Dep. 52:11-53:24.  Mr. Avila then

17   found the insurance card and brought it to Officer McMahon, and also presented Officer

18   McMahon literature stating that Officer McMahon had no lawful right to impound plaintiff's

19   vehicle as he was merely "traveling."  McMahon Decl. ¶ 6; Avila Dep. 53:25-56:25.  Officer

20   McMahon indicated to Mr. Avila that he did not agree with his interpretation of law and that he

21   indeed had the authority to impound the vehicle and issue a citation.  McMahon Decl. ¶ 6.

22   Officer McMahon then requested that Mr. Avila step away and stop interfering with his police

23   work.  Id.

24        Officer McMahon again requested that Mr. Avila step away as Officer McMahon was

25   attempting to complete the required paperwork.  McMahon Decl. ¶ 6; Avila Dep. 66:16-67:16.

26   Again Mr. Avila initially complied, but then again approached Officer McMahon requesting to

27   see the "oath of office."  McMahon Decl. ¶ 6; Avila Dep. 59:8-60:12.  Officer McMahon

28   indicated to Mr. Avila that he did not have a copy nor was required to carry one.  McMahon Decl.

¶ 6; Avila Dep. 59:8-60:12; 63:13-20.  Mr. Avila insisted that Officer McMahon needed to have the "oath of office" and became upset.  McMahon Decl. ¶ 6.  Mr. Avila and Officer McMahon were the only persons present at the scene prior to the arrest.  Avila Dep. 93:2-13.

Officer McMahon, now feeling threatened by Mr. Avila's actions in causing delay in the performance of his duties, informed Mr. Avila that he was now under arrest, ordered him to face away and place his hands on his head.  McMahon Decl. ¶ 6; Avila Dep. 66:16-68:25.  Mr. Avila began to argue but then complied and was handcuffed using a standard bent wrist technique.  McMahon Decl. ¶ 6; Avila Dep. 68:7-69:3.  Upon completing the arrest, Officer McMahon proceeded to complete an inventory search of Mr. Avila's vehicle.  Avila Dep. 87:22-88:8.

Using a bent wrist technique, Officer McMahon placed the handcuffs on Mr. Avila wrists with his hands behind the back.  McMahon Decl., ¶¶ 6, 7; Avila Dep. 68:7-69:3.  In order to effect the arrest, Mr. Avila was placed facing the CHP patrol vehicle, his legs were spread apart by Officer McMahon, and his wrist moved into the handcuffing position.  McMahon Decl. ¶ 7; Avila Dep 87:22-23.  Mr. Avila described the technique used by Officer McMahon at his deposition.  McMahon Decl. ¶ 7; Avila Dep. 68:7-69:3, 124:6-130:8.  The bent wrist technique as applied to Mr. Avila is taught and authorized for the use of all CHP officers, and is explained in detail in CHP Policy Manual HPM 70.6, Chapter 21.  McMahon Decl. ¶ 7.  Once Mr. Avila was in handcuffs, Officer McMahon placed him in the back seat of the CHP patrol vehicle.  McMahon Decl. ¶ 7; Avila Dep. 70:2-3.  Mr. Avila was buckled prior to the trip to San Joaquin County Jail.  McMahon Decl. ¶ 7.

At no time did Officer McMahon use any additional force other than that required to place Mr. Avila under arrest.  McMahon Decl. ¶ 7; Avila Dep. 83:3-16; 83:22-84:10.  At no time during the subject incident did Officer McMahon kick, strike, spit, punch, choke, or use a baton on Mr. Avila.  McMahon Decl. ¶ 8; Avila Dep. 83:20-84:25; 196:13-197:14.  Plaintiff was never placed on the ground, struck by any object, kicked, Tased, and never suffered any bleeding or unconsciousness.  McMahon Decl. ¶ 8; Avila Dep. 83:17-85:3; 85:12-21.  At no time did Officer McMahon draw his service weapon during the incident or use a baton or Taser on Mr. Avila.

7

1  McMahon Decl. ¶ 8; Avila Dep. 84:11-19; 85:1-3; 197:15-19.  Chief Clarence Chapman, an

2  expert in use of force by law enforcement, found that Officer McMahon's arrest of Mr. Avila

3  was objectively reasonable and consistent with CHP policies and training as well as California

4  Commission on Peace Officer Standards and Training (P.O.S.T.) guidelines.  Chapman Decl. ¶ 2-

5  7.

6      Officer McMahon was acting within the course and scope of his official duties as a trained

7  and duly certified California State peace officer at the time of his encounter with Mr. Avila.

8  Chapman Decl. ¶ 5.  Officer McMahon had no legal or procedural obligation pursuant to

9  California laws, CHP policy, or California P.O.S.T. training to engage in a debate with Mr. Avila

10  regarding the constitutionality of his law enforcement authority.  Chapman Decl. ¶ 6.  Officer

11  McMahon applied handcuffs to Mr. Avila pursuant to a lawful arrest in accordance with CHP

12  policy and P.O.S.T. training guidelines; the application of handcuffs under CHP policy is not a

13  reportable use of force.  Id.  Under CHP policy and California P.O.S.T. training, all arrestees with

14  few exceptions are required to be handcuffed.  Chapman Decl. ¶ 7.

15      CHP Policy Manual HPM 70.6, Chapter 21, instructs CHP officers that all persons

16  arrested on a charge requiring incarceration, except for sick; injured, elderly, or pregnant

17  individuals, shall be handcuffed.  Id.  Officers are instructed that handcuffs should be applied

18  with the subject's hands in a position to the rear of their bodies.  Id.  After Officer McMahon

19  determined that Mr. Avila was in violation of the law and subject to arrest for interfering with his

20  lawful duties, he used a departmentally trained and approved firm grip to place Mr. Avila's arms

21  behind his back and apply handcuffs.  Id.  P.O.S.T. Learning Domain #33: Arrest and Control,

22  Chapter 5, instructs that handcuffs are temporary restraining devices used to limit a prisoner's

23  actions for the protection of both the officer and the arrestee.  Id.  The method of handcuffing

24  used by Officer McMahon did not differ from standard restraint and handcuffing procedures.  Id.

25      After arrest, Mr. Avila was taken to San Joaquin County jail and booked along with his

26  property.  McMahon Decl. ¶ 7; Avila Dep. 70:10-12.  Officer McMahon recommended several

27  charges for filing against Mr. Avila to the San Joaquin County District Attorney.  McMahon

28  Decl. ¶ 9.  Officer McMahon recommended a charge of Cal. Penal Code§ 148 (a) for

8

1   continuously interfering with the duty of a police officer from the time of initial contact.

2   McMahon Decl. ¶ 9.  Mr. Avila was warned more than once but disregarded the warnings and

3   became threatening which caused Officer McMahon to arrest Mr. Avila for delaying duties.  Id.

4   66.  Officer McMahon recommended a charge of Cal. Vehicle Code§ 14601.1(A) for driving

5   under a suspended California driver's license.  Id.  Officer McMahon recommended a charge of

6   Cal. Vehicle Code § 22349(b) for driving a motor vehicle on public highway greater than 55 mph.

7   Id.

8          On March 8, 2016, the District Attorney's Office of San Joaquin County filed a criminal

9   complaint in Superior Court of California, County of San Joaquin, case number STK- CR- MI -

10  2016 - 3656.  Request for Judicial Notice, Exhibit D, Bates SJC0001-SJC0004.  The criminal

11  complaint set forth three counts: Count One - resisting, obstruct, delay of peace officer in

12  violation of Cal. Penal Code§ 148 (a) (one); Count Two - driving while license suspended in

13  violation of Cal. Vehicle Code § 14601.1(a); and Count Three - speeding in a 55 mph zone in

14  violation of Cal. Vehicle Code 2§ 2349 (b).  Id.  On August 12, 2016, Mr. Avila pled nolo

15  contendere to Count Two, driving while license suspended driver's license pursuant to Cal.

16  Vehicle Code § 14601.1(a).  Request for Judicial Notice, Exhibit D, Bates SJC0019-SJCOO20;

17  Avila Dep. 109:13-113:13; 118:1-11.  Counts One and Three were dismissed upon the motion of

18  the prosecutor in the interests of justice in view of the plea.  Request for Judicial Notice, Exhibit

19  D, Bates SJCOOl8.  Plaintiff freely and knowingly and voluntarily entered into the plea

20  agreement, though he did so to avoid putting stress on his marriage.  Request for Judicial Notice,

21  Exhibit D, Bates SJC0018-SJC0020; Avila Dep. 109:13-113:13; 118:1-11; ECF No. 88 at 1.

22         Mr. Avila was sentenced to three years conditional probation and ordered to pay a

23  $235.00 fine.  Request for Judicial Notice, Exhibit D, Bates SJC0018-SJC0020.  Plaintiff did not

24  file a Government Claim pursuant to the California Government Claims act.  Goodwin Decl. ¶¶

25  1-4.

26         Plaintiff filed this action on January 25, 2018.  ECF No. 1.  The operative TAC makes

27  several claims against Officer McMahon, including (Count 1) violations of 42 U.S.C. § 1983 as

28  follows: (a) false arrest (b) excessive use of force, (c) restraint of free speech; (Count 2) violations

1    of 42 U.S.C. § 1983 as follows: unlawful vehicle search; (Count 3) violation of 42 U.S.C. § 1983

2    for denial of due process related to the impoundment of plaintiff's vehicle; (Count 4) duplicative

3    of count 1; (Count 5) intentional infliction of emotional distress; (Count 6) negligence, (Count 7)

4    deliberate indifference by causing other participants to participate in the violation of plaintiff's

5    rights; (8) common law claim (duplicative).  ECF No. 61 at 8-12.  Plaintiff seeks damages and

6    declaratory relief.  Id. at 12.

7                            **IV.    Analysis**

8         A.  Plaintiff's False Arrest Claim is *Heck*-Barred

9              Defendant contends that plaintiff's claims against Officer McMahon are barred by Heck v.

10   Humphrey, 512 U.S. 477 (1994).  ECF No. 43-1 at 12-13.  The court agrees as to the false arrest

11   claim.  Under Heck, a person may not proceed on a claim for damages under § 1983 if a judgment

12   favoring plaintiff "would necessarily imply the invalidity of his conviction or sentence."  Heck,

13   512 U.S. at 487.  In such a case, plaintiff is foreclosed from proceeding absent proof that the

14   conviction or sentence has been reversed, expunged or invalidated.  Id. at 486–487.  However, "if

15   the district court determines that the plaintiff's action, even if successful, will not demonstrate the

16   invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed

17   to proceed ...."  Id. at 487.  As an illustration of the rule's application, the Heck Court explained

18   that an individual convicted of resisting arrest, defined as intentionally preventing a peace officer

19   from effecting a lawful arrest, would be barred from bringing a claim for damages for unlawful

20   arrest.  Id. at 487 n.6.  That result is compelled by the fact that plaintiff, in order to prevail on his

21   § 1983 claim, would have to negate an element of his conviction offense: the lawfulness of the

22   arrest.  Id.

23             "In evaluating whether claims are barred by Heck, an important touchstone is whether a

24   §1983 plaintiff could prevail only by negating 'an element of the offense of which he has been

25   convicted.'"  Cunningham v. Gates, 312 F.3d 1148, 1153-54 (9th Cir. 2002) (quoting Heck, 512

26   U.S. at 487 n.6.).  "For purposes of the Heck analysis, a plea of nolo contendere in a California

27   criminal action has the same effect as a guilty plea or jury verdict of guilty."  Rodriguez v. City of

28   Modesto, No. 1:10-cv-1370 LJO MJS, 2010 WL 4880748, at *7, 21 (E.D. Cal. Nov. 23, 2010)

1    (quoting <u>Nuno v. County of San Bernardino</u>, 58 F.Supp.2d 1127, 1135 (C.D. Cal.1999)).

2          Plaintiff pled nolo contendere to driving on a suspended license. Request for Judicial

3    Notice, Exhibit D, Bates SJC0019-SJCOOio; Avila Dep. 109:13-113:13; 118:1-11.  A finding in

4    plaintiff's favor on plaintiff's claim of false arrest would necessarily negate his conviction for the

5    crime of driving on a suspended license.  Plaintiff's argument that he only pled to the criminal

6    charge in order to avoid putting pressure on his marriage is irrelevant.  ECF No. 88 at 1-2.  Thus,

7    this claim is barred by <u>Heck</u>.

8          B.   <u>Defendant is Entitled to Qualified Immunity and Summary Judgment on the Merits</u>

9          Defendant asserts that he is protected from all 42 U.S.C. § 1983 claims by the doctrine of

10   qualified immunity.  The court agrees, as the evidence here does not support a conclusion that any

11   constitutional violation occurred—let alone a violation that would have been apparent to Officer

12   McMahon at the time of his encounter with plaintiff.  Government officials are immune "from

13   liability for civil damages insofar as their conduct does not violate clearly established statutory or

14   constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457

15   U.S. 800, 818 (1982).  "Qualified immunity balances two important interests—the need to hold

16   public officials accountable when they exercise power irresponsibly and the need to shield

17   officials from harassment, distraction, and liability when they perform their duties reasonably."

18   <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009).  Ideally, qualified immunity is determined at the

19   earliest possible stage in litigation to avoid unnecessary burden and expense.  <u>Hunter v. Bryant</u>,

20   502 U.S. 224, 227 (1991)).

21          In <u>Saucier v. Katz</u>, 533 U.S. 194 (2001) (overruled in part by <u>Pearson</u>, 555 U.S. 223), the

22   Supreme Court set forth a two-step inquiry for determining whether qualified immunity applies.

23   First, a court must ask, "[t]aken in the light most favorable to the party asserting the injury, do the

24   facts alleged show the officer's conduct violated a constitutional right?"  <u>Id.</u>  Second, if the

25   answer to the first inquiry is "yes," the court must ask whether the constitutional right was

26   "clearly established."  <u>Id.</u>  This second inquiry is to be undertaken in the specific context of the

27   case.  <u>Id.</u>  In <u>Pearson v. Callahan</u>, the Supreme Court removed any requirement that the <u>Saucier</u>

28   test be applied in a rigid order, holding "[t]he judges of the district courts and the courts of

1   appeals should be permitted to exercise their sound discretion in deciding which of the two

2   prongs of the qualified immunity analysis should be addressed first in light of the circumstances

3   in the particular case at hand." Pearson, 555 U.S. at 236.

4       "The plaintiff bears the burden of proof that the right allegedly violated was clearly

5   established." Tarabochia v. Adkins, 766 F.3d 1115, 1125 (9th Cir. 2014) (internal quotation

6   marks omitted). "To meet this standard the very action in question need not have previously been

7   held unlawful." Id. (internal quotation marks omitted). This is especially the case in the context

8   of alleged Fourth Amendment violations, where the constitutional standard of "reasonableness"

9   requires a fact-specific inquiry. Mattos v. Agarano, 661 F.3d 433, 442 (9th Cir. 2011) (en banc).

10  The court must determine "whether a reasonable officer would have had fair notice that the action

11  was unlawful[.]" Tarabochia, 766 F.3d at 1125 (internal quotation marks and brackets omitted).

12  At its base, "[t]he qualified immunity doctrine rests on a balance between, on the one hand,

13  society's interest in promoting public officials' observance of citizens' constitutional rights and,

14  on the other, society's interest in assuring that public officials carry out their duties and thereby

15  advance the public good." Beier v. City of Lewiston, 354 F.3d 1058, 1071 (9th Cir. 2004).

16              1.   Fourth Amendment: Excessive Use of Force Claim

17      The undisputed facts of this case fail to establish a Fourth Amendment violation. The

18  court begins with the first prong of the qualified immunity analysis, which presents the same

19  question as does the motion for summary judgment on the merits: do the facts, viewed in

20  plaintiff's favor, support a finding that the officer's conduct violated a constitutional right? They

21  do not. "Handcuffing an arrestee is standard practice, everywhere." LaLonde v. County of

22  Riverside, 204 F.3d 947, 964 (9th Cir. 2000) (Trott, J., concurring in part, dissenting in part). The

23  undisputed facts show that plaintiff was handcuffed in the usual way. Although applying

24  handcuffs in an abusive manner can constitute excessive force, see Hansen v. Black, 885 F.2d

25  642, 643 (9th Cir. 1989), the facts here do not support a finding that Officer McMahon acted in an

26  abusive manner.

27      The objective reasonableness of force is evaluated in the context of the circumstances

28  facing the officer. Graham v. Connor, 490 U.S. 386, 396 (1989). The relevant circumstances

include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Id.  In this case, plaintiff was arrested for driving on an admittedly suspended license and interfering with police work.  Although plaintiff argues that he felt pain when his arms were placed behind his back for handcuffing, he does not allege facts that indicate the handcuffing was unusual in any way or that unnecessary force was applied.  Likewise, plaintiff's argument that he experienced discomfort while in the patrol car while Officer McMahon completed his work at the scene and drove him to the jail is unavailing without any facts indicating that Officer McMahon used any unnecessary force.  Plaintiff's subjective experience of pain, without more, cannot establish a constitutional violation because even the deliberate infliction of pain does not necessarily violate the Fourth Amendment.  See, e.g., Forrester v. City of San Diego, 25 F.3d 804, 806–07 (9th Cir. 1994) (use of "pain compliance techniques" not inherently unreasonable).  In light of the circumstances, Officer McMahon was fully justified in handcuffing plaintiff swiftly and securely and placing him in his patrol car for transportation to the jail.  Under the applicable legal standard, defendant did not use unreasonable force and plaintiff's constitutional rights were not violated.  Officer McMahon is therefore entitled to summary judgment on this claim.

### 2.  Fourth Amendment: Search and Seizure of Vehicle Claims

Likewise, no there was no unconstitutional search or seizure in this case.  "The impoundment of an automobile is a seizure within the meaning of the Fourth Amendment." Miranda v. City of Cornelius, 429 F.3d 858, 862 (9th Cir. 2005).  "The Fourth Amendment proscribes warrantless searches and seizures by law enforcement officers as per se unreasonable ... subject only to a few specifically established and well-delineated exceptions."  United States v. Torres, 828 F.3d 1113, 1118 (9th Cir. 2016) (internal citations omitted).  One such exception is the "community caretaking" doctrine,  under which "police may, without a warrant, impound and search a motor vehicle so long as they do so in conformance with the standardized procedures of the local police department and in furtherance of a community caretaking purpose, such as promoting public safety or the efficient flow of traffic."  Id.  This rule ensures that vehicle

1    impoundments are done "on the basis of something other than suspicion of evidence of criminal

2    activity." Miranda, 429 F.3d at 864.  The government bears the burden of establishing that a

3    vehicle's impoundment and search are justified under an exception to the warrant requirement.

4    United States v. Cervantes, 703 F.3d 1135, 1140–41 (9th Cir. 2012).

5          Here, Officer McMahon had probable cause to pull plaintiff over for speeding, and

6    plaintiff told Officer McMahon that he was driving on a suspended license, which the officer

7    confirmed.  California Vehicle Code section 14602.6(a)(l) authorizes the immediate arrest of a

8    person operating a vehicle on a public road "while his or her driving privilege was suspended or

9    revoked."  Additionally, Section 14602.6(a)(l) authorizes the immediate impoundment of a

10   vehicle driven by an unlicensed driver or by one whose driver's license has been suspended or

11   revoked.  The impoundment of plaintiff's vehicle and accompanying inventory search did not

12   violate the Fourth Amendment, and defendant is entitled to summary judgment.

13                    3.  Restraint of Free Speech

14         Plaintiff's First Amendment rights were not violated.  Plaintiff clarified his First

15   Amendment claim at his deposition, stating that Officer McMahon arrested him as a result of Mr.

16   Avila "simply asking questions about [Officer McMahon's] actions violating the constitution."

17   Deposition of Avila, 137:13-14.  "To state a First Amendment retaliation claim, [a plaintiff] must

18   plausibly allege that (1) [they] engaged in a constitutionally protected activity, (2) Defendants'

19   actions would chill a person of ordinary firmness from continuing to engage in the protected

20   activity, and (3) the protected activity was a substantial or motivating factor in Defendants'

21   conduct."  Sampson v. County of Los Angeles, 974 F.3d 1012 (9th Cir. 2020).  To prevail on a

22   claim of retaliation for asserting First Amendment rights, a plaintiff must establish a "causal

23   connection" between the government defendant's "retaliatory animus" and the plaintiff's

24   "subsequent injury."  Hartman v. Moore, 547 U.S. 250, 259 (2006).  "It is not enough to show

25   that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must

26   cause the injury.  Specifically, it must be a 'but-for' cause, meaning that the adverse action

27   against the plaintiff would not have been taken absent the retaliatory motive."  Nieves v. Bartlett,

28   139 S. Ct. 1715, 1722 (2019).

1    The court has already found that there was probable cause to arrest Mr. Avila as soon as

2    Officer McMahon ascertained Mr. Avila was operating a vehicle with a suspended license.

3    Probable cause to arrest Mr. Avila also arose from Mr. Avila's continued interference with

4    Officer McMahon as the officer attempted to perform his law enforcement duties related to the

5    traffic stop.  Plaintiff cannot show, based on the undisputed facts, that his speech was the "but

6    for" cause of his arrest, and therefore his First Amendment claim cannot succeed as a matter of

7    law.  See Nieves, 139 S. Ct. at 1726 ("The presence of probable cause should generally defeat a

8    First Amendment retaliatory arrest claim.")  Defendant is entitled to summary judgment on this

9    claim.

10                       4.  Due Process and Vehicle Impoundment

11    To the extent plaintiff claims his due process rights were violated by his arrest and the

12    towing and impoundment of his vehicle, the court finds no constitutional violation occurred.  As

13    discussed above, the search and arrest of plaintiff and the seizure of plaintiff's vehicle were

14    supported by probable cause, the towing and impoundment of his vehicle was permissible under

15    the community caretaking doctrine, and all actions taken against plaintiff were well within the

16    bounds of constitutional requirements.  In general, "there is no right to a pre-tow hearing."  Soffer

17    v. City of Costa Mesa, 798 F.2d 361, 363 (9th Cir. 1986).  Plaintiff's due process rights were not

18    violated.

19    Additionally, the Ninth Circuit has held that the impoundment of a vehicle pursuant to

20    California Vehicle Code section 14602.6, with its procedural safeguards, satisfies due process

21    requirements:

22           The statute also provides for notice and an opportunity to be heard.
              Owners of impounded vehicles have 'the opportunity for a storage
23           hearing ... in accordance with Section 22852' in which they may
              contest the impoundment or present mitigating circumstances
24           necessitating an early return of the vehicle.  Cal. Veh. Code §
              14602.6(b).  Notice is to be 'mailed or personally delivered to the
25           registered and legal owners within 48 hours with relevant
              information on how to request a hearing. Cal. Veh. Code§ 22852(b).
26           These provisions satisfy due process."

27    Salazar v. City of Maywood, 414 F. App'x 73, 74–75 (9th Cir. 2011).

28    There was no due process violation here, and defendant is entitled to summary judgment.

15

1          5.  Deliberate Indifference

2          Plaintiff titled a cause of action "deliberate indifference" but in its description, stated that

3   Officer McMahon was liable for causing San Joaquin County and John Davis (non-defendants) to

4   willfully and knowingly violate plaintiff's rights.  ECF No. 61 at 10-11.  To the extent plaintiff is

5   asserting that defendant is vicariously liable for the constitutional violations of others, there is no

6   available constitutional claim.  "Vicarious liability is inapplicable to Bivens and § 1983 suits, a

7   plaintiff must plead that each Government-official defendant, through the official's own

8   individual actions, has violate the Constitution."  Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

9          C.  Plaintiff's State Law Claims

10          Plaintiff's remaining causes of action, intentional infliction of emotional distress and

11  negligence, are state law claims.  Because defendant is entitled to summary judgment on all

12  claims brought under federal law, this court should decline to exercise supplemental jurisdiction

13  over plaintiff's putative state law claims.  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350

14  (1988) (when federal claims are eliminated before trial, district courts should usually decline to

15  exercise supplemental jurisdiction).  The undersigned takes no position on whether plaintiff

16  would be able to successfully pursue these claims in state court.

17                        **V.        Conclusion**

18          Accordingly, for the reasons explained above, IT IS RECOMMENDED that defendant's

19  motion for summary judgment (ECF No. 79) be GRANTED.  It is further recommended that

20  plaintiff's pending motions (ECF Nos. 83 and 85) be DENIED as MOOT.

21          These findings and recommendations are submitted to the United States District Judge

22  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days

23  after being served with these findings and recommendations, any party may file written

24  objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a

25  document should be captioned "Objections to Magistrate Judge's Findings and

26  Recommendations."  Any response to the objections shall be filed with the court and served on all

27  parties within fourteen days after service of the objections.  Local Rule 304(d).  Failure to file

28  objections within the specified time may waive the right to appeal the District Court's order.

1    Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57

2    (9th Cir. 1991).

3         IT IS SO ORDERED.

4    DATED: October 16, 2020

5

6         ALLISON CLAIRE
          UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28